IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLENE JOY WILDONGER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY,[1] )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 23-311-SRF |

Marc H. Snyder, Rosen Moss Snyder & Bleefeld, LLP, Wilmington, DE.

   Attorney for Plaintiff.

David C. Weiss, United States Attorney, District of Delaware; Sandra Romagnole, Special Assistant United States Attorney, Office of Program Litigation, Social Security Administration, Baltimore, MD; Brian C. O'Donnell, Associate General Counsel, Social Security Administration, Baltimore, MD.

   Attorneys for Defendant.

**MEMORANDUM OPINION**

March 28, 2024
Wilmington, Delaware

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023 and is substituted for Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.



**FALLON, U.S. MAGISTRATE JUDGE:**

Plaintiff Marlene Wildonger ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) against defendant Martin O'Malley, the Commissioner of the Social Security Administration ("Commissioner"), seeking judicial review of the Commissioner's final decision denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.[2] (D.I. 2) Currently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.[3] (D.I. 11; D.I. 14) For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

## I. BACKGROUND

### A. Procedural History

Plaintiff protectively filed an application for SSI on October 22, 2020, alleging disability beginning on February 11, 2016 due to coronary artery disease ("CAD"), congestive heart failure, angina, hypertension, coronary artery bypass graft ("CABG"), anxiety, depression, peripheral vascular disease, pulmonary value disease, edema, and coronary atherosclerosis. (D.I. 8 at 192-93, 247-48) Plaintiff's claims were denied initially and upon reconsideration. (*Id.* at 83-99)

At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on October 19, 2021. (*Id.* at 31-56) The ALJ issued an unfavorable decision on October 27, 2021, finding that

---

[2] On November 15, 2023, the parties consented to the jurisdiction of the undersigned judicial officer to conduct all proceedings in this matter through final judgment, pursuant to 28 U.S.C. § 636(c). (D.I. 18)

[3] The briefing on the pending motions is found at D.I. 12 and D.I. 15. On October 31, 2023, Plaintiff filed a notice of her intention to rest on her opening brief and waive her right to a reply brief. (D.I. 17)

Plaintiff could perform a range of light work. (*Id.* at 18-26) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-7)

Plaintiff brought this civil action challenging the ALJ's decision on March 21, 2023. (D.I. 2) Plaintiff filed the pending motion for summary judgment on August 14, 2023, and the Commissioner cross-moved for summary judgment on September 11, 2023. (D.I. 11, D.I. 14) The motions are now ripe for resolution.

### B. Medical History

The ALJ found that Plaintiff had the following severe impairments: CAD/atherosclerosis status post CABG and peripheral arterial disease ("PAD") and status post aorto-bifemoral bypass; perivascular/arterial disease. (D.I. 8 at 20) The ALJ concluded that Plaintiff's anxiety and depression were not severe. (*Id.* at 21) The court focuses its summary of the medical evidence on the records relevant to Plaintiff's mental impairments, which form the basis of Plaintiff's appeal. (D.I. 12 at 6-11)

There is no dispute that the administrative record contains no evidence of Plaintiff's treatment records by her primary care physician for mental health conditions, or that Plaintiff did not treat with a mental health practitioner. (D.I. 12 at 2; D.I. 15 at 3) Instead, Plaintiff refers to treatment notes from her cardiologist, Dr. Ehtasham Qureshi, and her vascular surgeon, Dr. Carlos Neves, who observed that Plaintiff had a history of anxiety and depression but did not treat her for those conditions. (*Id.*; D.I. 8 at 309, 355) Evidence of Plaintiff's mental impairments is derived primarily from the medical opinions of record.

In October of 2013, years prior to her alleged disability onset date, Plaintiff underwent a consultative psychological evaluation with Dr. Joseph Keyes. (D.I. 8 at 300-06) Plaintiff told

3

Dr. Keyes that she was first treated psychiatrically when she was in her 20's, but she stopped treatment until she had a heart attack in 2005. (*Id.* at 301) After the heart attack, Plaintiff began taking antidepressant and anti-anxiety medications prescribed by her primary care physician. (*Id.*)

On examination, Dr. Keyes stated that Plaintiff's functioning at the appointment was normal, and she was able to focus and maintain her attention to basic tasks during the evaluation, suggesting adequate attention and concentration. (*Id.*) Plaintiff was pleasant, friendly, and cooperative, and she reported independent self-care skills and the ability to perform routine chores and tasks. (*Id.* at 302) However, Dr. Keyes observed that Plaintiff reported symptoms of depression and comorbid anxiety, and he diagnosed her with moderate major depressive disorder. (*Id.* at 302-03) Plaintiff exhibited mild limitations in social and interpersonal skills. (*Id.* at 302) She reported feeling sad, worthless, and discouraged about the future due to the loss of her job and her home. (*Id.*) Although Plaintiff exhibited a loss of energy and a loss of interest in activities, Dr. Keyes opined that she would meet attendance, safety, and functional requirements in a work setting and could cope with usual changes in basic work routines. (*Id.* at 303)

Plaintiff returned to Dr. Keyes for another consultative psychological examination on February 18, 2021. (*Id.* at 336-41) During the exam, Plaintiff confirmed that she had never been hospitalized psychiatrically and she received prescription medication for anxiety and depression from her primary care physician. (*Id.* at 337) The exam findings were largely consistent with the results from the 2013 consultative exam, with Plaintiff reporting symptoms of depression and anxiety which did not impact her ability to care for herself independently and perform household

chores. (*Id.* at 338-39) Dr. Keyes diagnosed Plaintiff with mild-to-moderate persistent major depressive disorder with anxious distress and panic attacks. (*Id.* at 339)

On February 22, 2021, State agency psychological consultant Alex Siegel, Ph.D, found that Plaintiff had persistent depressive disorder with anxiety distress and panic. (*Id.* at 87) Plaintiff exhibited moderate limitations in her ability to interact with others and to concentrate, persist, or maintain pace. (*Id.* at 86) She exhibited mild limitations in her ability to understand, remember, or apply information and in her ability to adapt or manage herself. (*Id.*) However, Dr. Siegel opined that Plaintiff could understand, retain, and follow simple job instructions and perform simple, routine, repetitive work in a stable environment. (*Id.* at 90) Noting that Plaintiff had no hospitalizations due to mental impairments and did not participate in psychotherapy, Dr. Siegel concluded that "the medical data in file does not establish a severity level of mental impairment that would prohibit employment." (*Id.*) On reconsideration in May of 2021, State agency psychological consultant Carlene Tucker-Okine, Ph.D, affirmed Dr. Siegel's findings. (*Id.* at 96-97)

## C. Testimony

At the hearing before the ALJ on October 19, 2021, Plaintiff testified that she can no longer work because she does not handle stress very well. (D.I. 8 at 41) However, Plaintiff's testimony primarily focused on her physical ailments. (*Id.* at 38-48) Testimony on her mental impairments was limited to confirmation that her primary care doctor prescribes medication to treat her depression, and she has not seen a psychologist or psychiatrist. (*Id.* at 43) Plaintiff's symptoms of depression included sleepiness, crying, and a desire to be alone, with no specific triggers causing these symptoms. (*Id.* at 43-44)

The ALJ asked the vocational expert ("VE") to consider a hypothetical individual of Plaintiff's age, education, and experience who:

> is able to perform light work, occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl; tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation, vibrations; and no exposure to hazards such as moving machinery or unprotected heights; if the individual is able to finger, handle, and reach frequently; would such an individual be able to perform the Claimant's past work?

(*Id.* at 50-51) The VE testified that such a hypothetical individual would not be able to perform Plaintiff's past work as a parts delivery person. (*Id.* at 51)

The ALJ then asked the VE to consider a hypothetical individual with all of the previously listed limitations, who was

> also able to remember, understand, and carry out simple instructions; could not work at a production pace such as assembly line work; w[as] able to frequently interact with supervisors and coworkers, but only occasionally work in tandem or directly with others; and only occasionally interact with the public, would such an individual be able to perform any occupations in the national economy?

(*Id.*) The VE responded that such an individual could perform work as a checker I, an outside deliverer or a courier, or an office helper in the national economy. (*Id.* at 52)

6

### D. The ALJ's Findings

Based on the medical records and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from the October 22, 2020 application date through the date of the ALJ's written decision on October 27, 2021. (D.I. 8 at 26) The ALJ found, in pertinent part:

1. The claimant has not engaged in substantial gainful activity since October 22, 2020, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: CAD/atherosclerosis status post CABG and PAD and status post aorto-bifemoral bypass; perivascular/arterial disease (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl. The claimant can tolerate occasional exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation; and no exposure to hazards.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant . . . was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

      national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 22, 2020, the date the application was filed (20 CFR 416.920(g)).

(*Id.* at 20-26)

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

## III. DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A disability is defined for purposes of SSI as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe

8

that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at § 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at § 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at § 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at § 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal

9

quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding her mental impairments non-severe at step two of the sequential analysis. (D.I. 12 at 6-11) An impairment is "not severe" only if it involves a "slight abnormality" that has "no more than a minimal effect" on the individual's ability to work. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). An impairment is severe where it significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. § 416.922(b). The severity determination at step two of the sequential analysis is "not an exacting one" for a claimant to meet, and "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." *McCrea*, 370 F.3d at 360.

Substantial evidence supports the ALJ's determination that Plaintiff's mental impairments are not severe. The ALJ considered the limited treatment records which described

10

Plaintiff's anxiety and depression as stable and adequately managed with medication. (D.I. 8 at 21, 309, 355) The ALJ also observed that Plaintiff had not been psychiatrically hospitalized and experienced no significant restrictions in her activities of daily living due to her mental impairments. (*Id.* at 21) In evaluating the medical opinion evidence as it pertains to the "paragraph B" criteria,[4] the ALJ credited the opinions of Drs. Siegel and Keyes to the extent that they found no limitations or mild limitations in the areas of understanding, remembering, or applying information and adapting or managing oneself. (*Id.* at 21, 86, 341-42) The ALJ was not required to include limitations based on mild mental impairments in the hypothetical or the RFC assessment. *See Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (holding that there was "no compelling reason" why mild mental impairments should be included in hypothetical where claimant's evidence "was generally very thin[.]").

Substantial evidence also supports the ALJ's decision to reject the opinions of Drs. Siegel and Keyes to the extent that they concluded Plaintiff had moderate limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace. (*Id.* at 21, 86, 341-42) In doing so, the ALJ explained that these opinions were inconsistent with exam findings that did not reveal significant and ongoing cognitive, memory, attention/concentration, or social/behavioral deficits. (*Id.* at 21) This reasoning is supported by Dr. Keyes' finding that Plaintiff had no limitation in her ability to relate to other people, "adequate attentional processes," and only mild limitations in her ability to cope with the pressures of ordinary work, such as meeting quality and production norms. (*Id.* at 337, 340-41) It is further supported by Dr.

---

[4] The "paragraph B" criteria are used to assess four broad areas of functional limitation: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00E.

Siegel's finding that Plaintiff had no significant limitations in her ability to perform activities within a schedule, maintain regular attendance, work in coordination with or in proximity to others, perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers, and maintain socially appropriate behavior. (*Id.* at 90) Moreover, the ALJ cited Plaintiff's adult function report, in which she reported no problems getting along with family, friends, neighbors, authority figures, or others. (*Id.* at 21, 263-64) Plaintiff also confirmed that she could follow written and spoken instructions and could finish activities she started, such as a conversation, reading, or watching a movie. (*Id.* at 264)

Dr. Siegel based his assessment of Plaintiff's difficulty with concentration and attention on her subjective complaints. (*Id.* at 89) ("Claimant reports difficulty with concentration and attention."). Although "reliance on subjective complaints should not necessarily be undermined because psychological and psychiatric conditions are necessarily and largely diagnosed on the basis of a patient's subjective complaints," *see Duncan v. Colvin*, 2016 WL 7188216, at *11 (M.D. Pa. Dec. 12, 2016), the subjective complaints in this instance are inconsistent with Dr. Keyes' objective finding that Plaintiff "demonstrated her ability to focus and maintain her attention to basic tasks during the evaluation," suggesting "adequate attentional processes." (D.I. 8 at 337) On reconsideration, State agency physician Carlene Tucker-Okine, Ph.D., concluded that Plaintiff "is able to focus and maintain attention." (*Id.* at 96) And in her own testimony about her depression during the hearing before the ALJ, Plaintiff described symptoms of sleepiness, social disengagement, and crying, but she did not identify any limitations pertaining to attention and concentration, or any other limitations resulting from her mental conditions. (*Id.* at 44)

Plaintiff relies on the court's decision in *Roberts v. Kijakazi* in support of her position

12

that the ALJ improperly rejected the medical opinion evidence based on her own lay opinion. (D.I. 12 at 9-10) (citing *Roberts v. Kijakazi*, C.A. No. 21-14-CJB, 2022 WL 17403479, at *12 (D. Del. Dec. 2, 2022)). In *Roberts*, the medical opinions were rendered by the claimant's treating practitioners who assessed the claimant's condition over an extended period and made specific, consistent findings that the claimant would not be able to work based on those assessments. *Roberts*, 2022 WL 17403479, at *2-3. Here, in contrast, Plaintiff has no treating practitioners who rendered opinions on her mental impairments. *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (stating that a lack of medical evidence from treating practitioners "is very strong evidence that [the claimant] was not disabled."). Dr. Keyes' opinion was based on a one-time visit, his opinion did not suggest that Plaintiff's mental impairments would be work preclusive, and his finding of moderate limitations on Plaintiff's ability to sustain work performance and attendance was not supported by any narrative observations or findings. (D.I. 8 at 336-41)

The circumstances in *Parker v. Kijakazi* are also distinguishable. C.A. No. 22-384-GBW-SRF, 2023 WL 4865530, at *8-9 (D. Del. July 31, 2023). There, the court found error at step two because the ALJ failed to substantively consider the claimant's complete medical records regarding her foot and ankle problems during the relevant period. *Id.* Here, in contrast, the ALJ considered the available medical records and opinions pertaining to Plaintiff's mental impairments, including treatment records from Plaintiff's cardiologist and vascular surgeon which acknowledged Plaintiff's diagnoses of depression and anxiety. (D.I. 8 at 309, 355) Treatment records from Plaintiff's primary care physician regarding her depression and anxiety were not included in the record, and there is no dispute that Plaintiff did not participate in psychotherapy.

13

The ALJ's assessment of the medical opinions in the instant case is comparable to the circumstances in *Neely v. Kijakazi*, where the court found the ALJ properly rejected the depression-related medical opinion of the claimant's mental health practitioner finding a "moderate severe degree of impairment" in certain areas. C.A. No. 20-1551-CJB, 2022 WL 9987520, at *9 (D. Del. Oct. 17, 2022). The ALJ in *Neely* explained how a limitation in concentration, persistence, and maintaining pace was not consistent with treatment notes showing the claimant had intact attention and concentration, normal mental status exam findings, and no hospitalizations or participation in psychotherapy. *Id.* The court held that substantial evidence supported the ALJ's conclusion that Plaintiff's depression had "no more than a minimal effect on [her] ability to work." *Id.* Similarly, Dr. Keyes found Plaintiff had adequate attentional processes, insight, judgment, interest, and motivation; she exhibited appropriate social and interpersonal skills and clear and organized thinking; and she could switch and change tasks without difficulty. (D.I. 8 at 337-39) The ALJ properly found that these notations were not consistent with Dr. Keyes' opinions of moderate limitations in certain "paragraph B" criteria. (*Id.* at 21)

Even if the court were to conclude that the ALJ erred in finding Plaintiff's mental impairments non-severe or in failing to account for Plaintiff's mental impairments in the RFC assessment, any error is harmless. Plaintiff argues that "the VE would need to provide testimony that Plaintiff could perform other work in the national economy with the additional [mental] limitations in order for the ALJ's decision to be supported by substantial evidence." (D.I. 12 at 8) But the record shows that the VE's testimony did account for several moderate mental limitations, even though those limitations were not ultimately included in the ALJ's written decision. (D.I. 8 at 51-53)

14

Specifically, the ALJ asked the VE about a hypothetical individual who could "remember, understand, and carry out simple instructions; could not work at a production pace such as assembly line work; [ ] able to frequently interact with supervisors and coworkers, but only occasionally work in tandem or directly with others; and only occasionally interact with the public." (D.I. 8 at 51) These limitations largely account for moderate restrictions in Plaintiff's ability to interact with others and sustain work performance. The VE incorporated these mental limitations into his determination that Plaintiff could perform the Checker I, Courier, and Office Helper positions. (*Id.* at 52-53) Based on the VE's testimony about Plaintiff's ability to perform these jobs despite her physical and mental limitations, the ALJ determined that Plaintiff was "not disabled" because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 26)

Plaintiff also argues that the ALJ erred by failing to consider the 2013 opinion of Dr. Keyes following an earlier consultative examination. (D.I. 12 at 7-9) The Commissioner suggests in a footnote that the ALJ did consider the 2013 consultative evaluation but rejected it because it was outside of the relevant time period. (D.I. 15 at 13 n.5) A review of the ALJ's decision, and specifically the page of the decision cited by the Commissioner, indicates that the ALJ did not consider the 2013 evaluation by Dr. Keyes. (D.I. 8 at 21) Instead, the ALJ discussed the prior February 2016 decision by a different ALJ on Plaintiff's first application for benefits, which identified Plaintiff's depression as a severe impairment. (*Id.* at 63) The ALJ's failure to consider Dr. Keyes' 2013 consultative evaluation is error because an ALJ is required to consider all medical opinions in the record, including those predating the alleged onset of disability, even if that evidence is not ultimately relevant or probative. *See Sperring v. Berryhill*, 2018 WL 807165, at *2 (W.D. Pa. Feb. 9, 2018) (citing *Giese v. Comm'r of Soc. Sec.*, 251 F.

App'x 799, 804 (3d Cir. 2007)). Nonetheless, the ALJ's error in failing to consider Dr. Keyes' 2013 consultative evaluation is harmless in this instance because it "would not alter the ALJ's final decision with respect to [the claimant's] mental health limitations." *Favazza v. Kijakazi*, C.A. No. 21-17-CJB, 2023 WL 3055580, at *11 (D. Del. Apr. 24, 2023).

Plaintiff focuses on the fact that Dr. Keyes described her abstract thinking skills and immediate/working memory as average/normal during the 2013 consultative examination, but by the second examination in 2021, these scores were reduced to the low-average range. (D.I. 12 at 7-8) But Plaintiff fails to explain how these reductions impacted her ability to work or how they relate to the paragraph B criteria. Dr. Keyes' assessments of Plaintiff's functional impairments in 2013 and 2021 are otherwise substantially the same. (D.I. 8 at 305-06, 340-41) Dr. Keyes reduced his assessment of Plaintiff's limitations in only two areas: constriction of interests and the ability to sustain work performance and attendance. For the reasons previously discussed, the ALJ's rejection of Dr. Keyes' assessment of moderate limitations on Plaintiff's ability to sustain work performance and attendance is supported by substantial evidence. In the other paragraph B category challenged by Plaintiff, regarding her ability to interact with others, Dr. Keyes' assessment improved from "mild" in 2013 to "none" in 2021.

Having determined that the ALJ's step two analysis is supported by substantial evidence, and any error in that analysis is harmless, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, (D.I. 11), and the Commissioner's cross-motion for summary judgment is GRANTED, (D.I. 14). An Order consistent with this Memorandum Opinion shall issue.